AARON‚B. MEAD et al.

v.

FRANCIS B. PEABODY et al.

*Opinion filed December 18, 1899.*

1. CONTRACTS—*effect of agreement to pay "all notes" secured by trust deed.* One who contracts, as a consideration for a deed conveying certain lots to his wife, to pay "all notes" secured by a trust deed on the lots is liable for the entire debt evidenced by such notes, although the trust deed covers other lots not included in the conveyance, and his liability in such case is not limited to so much of the debt as is equitably chargeable to the lands purchased.

2. MORTGAGES—*extent to which foreclosure decree should award execution.* A decree foreclosing a trust deed covering lots conveyed in consideration of an agreement by the husband of the grantee to pay all notes secured by the trust deed, should award execution against the husband for so much, only, of the mortgage debt as remained unsatisfied after the sale of the lots so conveyed.

3. SAME—*when decree is right in ordering conveyed property to be first sold.* A decree foreclosing a trust deed covering lots, part of which had been conveyed, is correct in ordering the latter to be first sold, where the only consideration for the conveyance was an agreement by grantee's husband to pay the notes secured by the trust deed.

*Mead* v. *Peabody,* 83 Ill. App. 297, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

CHARLES H. HAMILL, for appellants.

SMITH, BLATCHFORD & TAYLOR, (EDWIN B. SMITH, of counsel,) for appellees Peabody and Houghteling.

CHYTRAUS & DENEEN, for appellee Olson.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court affirming, with slight modifications, a decree of foreclosure in the circuit court of Cook county. In the

Appellate Court the following statement and opinion were filed:

"This cause originated in a bill to foreclose a trust deed, filed by Peabody and Houghteling, to which Edward M. Olson, appellee, and Aaron B. Mead, appellant, with others, were parties defendant.

"The controversy in the case arises upon the question as to whether Olson or Mead shall be decreed to be, as between themselves, primarily liable to pay the debt involved in the foreclosure. Olson was the maker of all the notes in question, and, together with his wife, conveyed, as surety, the property, subject to the foreclosure. Afterward Olson and wife conveyed part of the premises, by special warranty deed, to the wife of Mead. As the only consideration for such transfer to his wife, appellant Mead entered into the following agreement in writing:

" 'I, A. B. Mead, in consideration of conveyance by Edward M. Olson, by special warranty deed to Mary E. Mead, dated the 10th day of July, 1890, of certain real estate, hereby agree to pay, protect and save harmless the said Edward M. Olson from all loss, damage or expense on account of any and all notes executed by said Olson, which may be secured by trust deed on lot 3 and N. ½ of lot 4; lots 6, 7, 8, 25, 26, 27 and 28, all in block three (3), in Nils F. Olson's subdivision of all the part of the north-west quarter of the south-west quarter of section 36, township 40, north, range 13, east of the third principal meridian, lying west of Clarkson avenue, in the city of Chicago, county of Cook, and State of Illinois. I also agree to pay a bill of $30 for plumbing done in No. 45 Clarkson ave., to H. Hogan; also a bill of $50 to Speigle & Co. for mantels put in No. 45 and 53 Clarkson ave.
A. B. MEAD.'

"Olson filed his cross-bill, setting up that by force of this agreement Mead had assumed and undertaken to pay all of the notes which secured the debt upon which the original bill to foreclose was brought. Mead answered, admitting the execution of the agreement in writing, but averring, in substance, that the undertaking was in respect to another trust deed and the notes thereby secured, and had no relation to the notes of Peabody and Hough-

teling, and that Mead, at the time of making the agreement, had no knowledge of the existence of the latter notes.

"There was practically no contest upon the original bill. Upon the cross-bill of Olson and answer of Mead, and replication thereto, there was a hearing, before a master in chancery. It was, in effect, contended by appellant Mead that he had by the written agreement assumed and agreed to pay certain notes aggregating $7900, secured by trust deeds, which were a first lien upon the property, but none of the second mortgage debt of $7000, or, at most, only so much thereof as should be equitably charged against the lots conveyed to Mrs. Mead. On the other hand, appellee Olson contended that by the writing Mead had assumed and agreed to pay not only the $7900, but as well the entire note of Olson held by Peabody and Houghteling for $7000, secured by a junior trust deed, being the note which is the basis of the original bill to foreclose. It appeared that after the contract by Mead to pay Olson's notes was entered into, Olson had paid sums amounting, with interest, to $2239.30 upon the Peabody and Houghteling note.

"The master's report found that by the agreement Mead assumed only the $7900 note admitted, and so much of the $7000 note as was equitably chargeable upon the lots named in the agreement. There were other lots of land than those named in the agreement as conveyed to Mrs. Mead by Olson, which were subject to the trust deed securing the $7000 note.

"The chancellor sustained exceptions of Olson, cross-complainant, to the master's report, and found that Mead not only assumed, and by his agreement in writing undertook to pay, the part of the $7000 equitably chargeable to the lots conveyed by Olson to Mrs. Mead, but that Mead had thereby assumed and agreed to pay the entire amount of the $7000 note. The decree finds that Mead is primarily liable, as between himself and Olson, for the en-

tire amount of the Peabody and Houghteling note, which is the subject of the original bill to foreclose, and orders that Olson have execution against Mead for the amounts paid by Olson upon the Peabody and Houghteling note after the contract by Mead was entered into. It orders the premises conveyed by Olson to Mrs. Mead to be sold first, and orders that if, after the coming in of the master's report of sale, it should appear that a sale of the other mortgaged premises was necessary, then Olson should have execution against Mrs. Mead 'for the amount realized from the sale of such other premises.'

"Per CURIAM: The only question presented by this appeal is the construction of the agreement in writing entered into between appellant A. B. Mead and appellee Olson.

"The various lots of land mentioned in the agreement were, at the time the agreement was made, subject, severally, to encumbrances which constituted a first lien and aggregated in amount $7900. They were also, except lot 26, subject to a second mortgage of $7000, which covered also certain other lots than the ones included in the written agreement. The question presented is, whether the undertaking of Mead was to pay the second mortgage notes, and, if so, whether to pay them in full, or only so much of them as should be equitably treated as a charge upon the lots mentioned in the agreement. While, by answer to cross-bill, appellant presented the theory of accident or mistake in the making of the contract, which by its terms includes all notes of Olson secured upon the lots in question, yet upon the hearing no such defense was presented. Mr. Mead very frankly states in his testimony that he was aware of the existence and lien of the Peabody and Houghteling note;— *i. e.*, the $7000 junior encumbrance,—before he made the written agreement, and had negotiated with Peabody and Houghteling for release of the lots conveyed to Mrs. Mead upon payment of a stated amount.

183—9

"We cannot assent to the contention of counsel for appellant that there is any ambiguity as to the subject matter of the contract,—*i. e.*, the notes,—which required extrinsic evidence, or made such evidence admissible, to indicate that notes were contemplated by the parties to the agreement. We are of opinion that the notes which appellant contracted to pay are all the notes of Olson which were then secured upon the lots described, or upon any of those lots. But if there is ambiguity, and if the evidence admitted upon the hearing is proper for the purpose of determining what notes are the subject matter of the contract, then the result is the same, for the evidence fully warrants the conclusion reached by the chancellor that all the notes of Olson here in question, including the $7000 note, were subject matter of the contract.

"Counsel for appellant does not seriously contend for a construction of the contract which would altogether exclude from its operation the $7000 note in question. He concludes his brief by asking that the decree be reversed and a decree directed 'by which Mrs. Mead's lots should bear only their just proportion of complainant's encumbrances, and Mr. Mead shall be charged with personal liability as to that proportion only of the debt that the value of the lots conveyed to Mrs. Mead bore, at the time of conveyance, to the value of all the lands subject to the encumbrance.' It is, then, to be determined whether the written agreement should be construed to be an undertaking to pay all of the $7000 encumbrance, or only such part thereof as is equitably chargeable to the lots purchased by Mrs. Mead.

"The contract in writing was made as a substitute for a clause in the special warranty deed from Olson to Mrs. Mead, by which Mrs. Mead, the grantee, should assume and agree to pay all mortgage liens on the lots. There is no dispute as to this fact. But the substitute,—*i. e.*, the contract by Mr. Mead,—does undertake to do more

than merely assume and pay all liens or encumbrances upon these lots, in that it specifically undertakes to pay 'all notes executed by Olson which may be secured by trust deed' on these lots. The authorities are in harmony to the effect that when the mortgage debt is specified in the clause by which the grantee of the fee assumes and agrees to pay, then the grantee undertakes to pay the entire amount of the debt, although the mortgage covers other lands as well, and his liability in such case is not limited to such part thereof, only, as is equitably chargeable upon the lands purchased. 1 Jones on Mortgages, sec. 743; *Wiling* v. *Campbell*, 106 N. Y. 325; *Welch* v. *Beers*, 8 Allen, 151.

"Counsel for appellant, in support of his contention that the liability should be construed as limited to the proportion of the mortgage debt, only, with which the lots in question are equitably chargeable, cites *Hoy* v. *Bramhall*, 4 C. E. Green, (N. J.) 74. But in that case the subject matter of the undertaking was 'the payment of all liens now on said premises.' If the language here to be construed was like to that, and if all that Mead had undertaken by his contract had been to pay 'all liens' upon the lots in question, then a like conclusion might here obtain. But here the appellant agreed to pay, not the debt to the extent that it was a lien upon these lots, but 'the notes.'

"We are inclined to view the construction put upon the contract by the learned chancellor as correct. There is, however, one respect in which the decree is erroneous. It provides that, after the sale of the lots conveyed to Mrs. Mead, if the mortgage debt is not thereby satisfied, then the other lots covered by the mortgage shall be sold, and that Olson shall have execution against Mead for the amount realized from such sale of the latter premises. This is erroneous. The premises last mentioned might sell for much more than the total of the obligation assumed by Mead. The decree should have awarded exe-

cution to Olson in this behalf only for an amount equal to such part of the mortgage debt as was not satisfied by the sale of the lots conveyed to Mrs. Mead.

"We do not regard the order that the lots conveyed to Mrs. Mead be first sold, as erroneous. If she were a purchaser for value the question would be different. But it appears, and the decree so finds, that the only consideration for the conveyance by Olson to her was the undertaking of Mr. Mead in the written contract. It was one transaction. Her interest in and rights to the lots conveyed cannot be held to be any better in this behalf than would the interest and right of Mr. Mead if the conveyance had been made to him.

"With the modification above suggested the decree is affirmed."

All the questions raised by the brief and argument of counsel for appellant in this court are considered, and, we think, properly decided, in the foregoing opinion. It will therefore be adopted as the opinion of this court and the judgment below affirmed.          *Judgment affirmed.*